UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**WILLIAM HARBOUR, on behalf of himself and all other opt-in Plaintiffs,**

    **Plaintiff,**

v.

**McNEIL GROUP, INC.**

    **Defendant.**

Case No. 2:19-cv-1545
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Chelsey M. Vascura

### OPINION AND ORDER

The matter before the Court is the Joint Motion for Approval of Collective Action Settlement (ECF No. 18). For the following reasons, the motion (ECF No. 18) is **GRANTED**.

### I.

Plaintiff William Harbour initiated this action on April 22, 2019 alleging collective violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code §§ 4111, *et seq.*, and the Ohio Prompt Pay Act, Ohio Rev. Code §§ 4113, *et seq.* (Compl., ECF No. 1.) Plaintiff also asserted an individual claim for tortious interference with a business relationship. (*Id.* ¶¶59–65.)

Plaintiff states that Defendant McNeil Group, Inc. ("Defendant") employed Plaintiff and others similarly situated as hourly, non-exempt employees at Defendant's business, Pinnacle Metal Products. (*Id.* ¶¶4–13.) Plaintiff alleges that himself and others similarly situated worked more than 40 hours in work weeks but were not paid one and one-half of their regular rate by Defendant for the hours worked over 40. (*Id.* ¶¶7, 28, 38.) Instead, Plaintiff claims, Defendant had a company policy of crediting hours worked over 40 as "comp time" applied to subsequent work weeks, which

1

resulted in unpaid overtime for Plaintiff and those similarly situated. (*Id.*) Plaintiff claims that Defendant's "comp time" practice violated both the FLSA and Ohio law. (*See id.*) Plaintiff brought this action as a FLSA opt-in collective action on behalf of himself and other similarly situated persons of the opt-in class, pursuant to 29 U.S.C. § 216(b). (*Id.* ¶25.) On August 28, 2019, the Court granted the parties' joint motion to conditionally certify a class of potential opt-in plaintiffs pursuant to 29 U.S.C. § 216(b). (ECF No. 8.) On July 17, 2020, the parties participated in a mediation before mediator Tony Merry and reached a settlement. (*See* ECF No. 17.)

On August 20, 2020, the parties filed a joint motion for approval of their collective action settlement. (ECF No. 18.) The settlement includes Defendant, Plaintiff, and six other opt-in plaintiffs. (Joint Mot. for Approval of Collective Action Settlement, ECF No. 18, hereinafter "Joint Mot.") As part of the settlement, Plaintiff and the six opt-in plaintiffs will receive 100% of their individual unpaid overtime damages, 100% of their liquidated damages, and 100% of their Ohio Prompt Pay Act damages as calculated by Plaintiff's counsel. (Joint Mot. at 3.) Additionally, Plaintiff will receive a $6000 service payment that also serves as consideration for a release of his individual tort claim against Defendant. (*Id.*) Plaintiff and the other six opt-in plaintiffs agreed to release Defendant from federal and state wage-and-hour claims. (*Id.* at 4.)

## II.

"An employee's claims under the FLSA generally are non-waivable and may not be settled without supervision of either the Secretary of Labor or a district court." *Vigna v. Emery Fed. Credit Union*, No. 1:15-CV-51, 2016 WL 7034237, at *2 (S.D. Ohio Dec. 2, 2016). "Thus, the proper procedure for obtaining court approval of the settlement of FLSA claims is for the parties to present to the court a proposed settlement, upon which the district court may enter a stipulated judgment only after scrutinizing the settlement for fairness." *Id.* (internal citation omitted). "If a

settlement in an employee FLSA suit reflects a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, the court may approve the settlement in order to promote the policy of settlement of litigation." *Id.* (internal citation omitted).

### III.

#### A. Proposed Collective Action Settlement

"The Sixth Circuit has identified the following seven factors a court may consider in determining whether the settlement of FLSA claims is 'fair and reasonable:' (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; (5) the opinion of class counsel and representatives; (6) the reaction of absent class members; and (7) public interest in the settlement." *Snide v. Disc. Drug Mart, Inc.*, No. 1L11CV244, 2013 U.S. Dist. LEXIS 40078, at *3–4 (N.D. Ohio Feb. 27, 2013) (internal citation omitted). After scrutinizing the proposed settlement and weighing the applicable factors, the Court agrees with the parties that the terms of the settlement are fair and reasonable.

First, there is no evidence of fraud or collusion in this case. The parties argue that the settlement was "reached in an adversarial proceeding, through arm's length negotiations between capable attorneys who have the necessary experience to protect the rights of the Parties in this matter." (Joint Mot. at 4.)  "Courts presume the absence of fraud or collusion unless there is evidence to the contrary." *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006).  There is no evidence of fraud or collusion and instead only evidence of good-faith, arm's length negotiations.  This factor favors approval of the settlement.

Second, the complexity, duration, and expense of litigation weighs in favor of settlement. Plaintiff's counsel states that, "if forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted wrangling." (Coffman Decl. ¶26.) The Court agrees.

Third, the amount of discovery completed in this case was adequate. Notice was issued to all putative class members, the notice period has passed, and Defendant produced "payroll and timekeeping documents to Plaintiffs' counsel so that damages could be calculated to inform the parties' settlement negotiations." (*Id.* ¶13–16.) Both parties represent that the class will receive 100% of their damages. (Joint Mot. at 3.) This leads the Court to believe that both parties made an informed decision after adequate discovery to enter into this settlement agreement. Thus, this factor weights in favor of approving the settlement agreement.

Fourth, the parties argue that they "well understand that litigation is an inherently risky process, and the likelihood of success for either party is virtually unknown." (Joint Mot. at 4.) Plaintiff's counsel also states that, had the action not settled, he "would have vigorously litigated the case without any promise of success and compensation." (Coffman Decl. ¶29.) "The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Wright v. Premier Courier, Inc.*, No. 2:16-CV-420, 2018 WL 3966253, at *4 (S.D. Ohio Aug. 17, 2018) (citing *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011)). Here, Plaintiff alleges he and other similarly situated were not paid for overtime as required by FLSA and Ohio law. Defendant denies these claims, but has agreed to compensate the plaintiffs for all damages in exchange for release of their claims against it. Thus, this factor favors approving the settlement.

4

Fifth, the parties state that the settlement reflects a "reasonable compromise of issues actually in dispute[.]" (Joint Mot. at 4.) Most importantly, the parties assert that the settlement is fair and reasonable because "the individual payments represent the full damages Plaintiffs could receive under the FLSA and Ohio laws during the applicable recovery periods." (Joint Mot. at 5; Coffman Decl. ¶18.) The settlement agreement includes a table delineating exactly how much will be paid to each opt-in plaintiff for: (1) W2 payment less applicable deductions and elections for back wages; and (2) MISC-1099 for liquidated and statutory damages, including $200 for OPPA claims. (ECF No. 18-1.) Counsel for both parties are experienced in the FLSA arena, and the Court gives deference to the parties' counsel's belief that the settlement is fair and reasonable. *Kritzer v. Safelite Sols.*, LLC, No. 2:10-cv-0729, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012) ("The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class.").

In sum, all the relevant factors weigh in favor of approving this settlement. The Court finds the settlement reflects a reasonable compromise over disputed issues and therefore is fair and reasonable. *See Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 WL 2532922, at *2 (S.D. Ohio June 24, 2022) ("If a settlement in an employee FLSA suit reflects 'a reasonable compromise over issues', such as FLSA coverage and/or computation of back wages that are 'actually in dispute,' the Court may approve the settlement 'in order to promote the policy of encouraging settlement of litigation.'").

### B. Representative Plaintiff's Service Awards

Plaintiff will be paid a $6,000 sum which represents both a service fee and consideration for release of his claim for tortious interference with a business relationship. (Coffman Decl. ¶19.) Plaintiff's counsel represents that Plaintiff assisted in the prosecution of the case and was

instrumental in the parties' settlement efforts. (*Id.*) Service "awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Wright*, 2018 WL 3966253, at *7 (citing *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)). In light of Plaintiff's time and efforts in this case, and given that the $6,000 fee also constitutes consideration for the release of Plaintiff's individual tort claim, the Court approves the service fee in the amount of $6,000 to Plaintiff.

### C. Attorneys' Fees and Litigation Costs

The parties have agreed that $6,500 of the settlement will be paid to Plaintiff's counsel for all attorneys' fees and expenses incurred in this action. (Joint Mot. at 3.) This amount represents a reduction in fees of over 57% of the fees and expenses Plaintiff's counsel actually incurred, but the parties represent that such reduction was "made to ensure that the Plaintiffs received their full possible damages." (*Id.*; Coffman Decl. ¶¶ 21–24.)

If an employer is found liable under the FLSA, the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant and costs to the action." *Bailey v. Black Tie Mgmt. Co. LLC*, No. 2:19-CV-1677, 2020 WL 4673163, at *5 (S.D. Ohio Aug. 12, 2020) (citing 29 U.S.C. § 216(b)). "In determining the reasonableness of fees, the Court is cognizant that '[t]he purpose of the FLSA attorney fees provision is to ensure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.'" *Id.* (citing *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994)). "The Sixth Circuit has approved both the 'lodestar' and percentage of the fund method of payment of attorneys' fees." *Vigna*, 2016 WL 7034237, at *4 (citing *Rawlings v. Prudential-Bache Prop., Inc.*, 9 F.3d 513, 515–16 (6th Cir. 1993)). "The Court should consider the unique circumstances of the case to determine which method is most appropriate." *Id.*

Here, Plaintiff's counsel states that he accumulated at least $15,191.81 in lodestar fees and costs, with that figure to increase through administration of the settlement. (Coffman Decl. ¶24.) The $6,500 payment to which the parties have agreed represents a reduction of $8,691.81 in Plaintiff's counsel's actual lodestar fees and costs. (*Id.*) The parties assert that the reduction in fees was agreed to in order to ensure that the plaintiffs received their full possible damages. (Joint Mot. at 3.) Considering that the collective members will receive 100% of their total damages and that Plaintiff's counsel agreed to a large fee reduction to facilitate this arrangement, the $6,500 award for attorneys' fees and costs is fair and undoubtedly promotes the purposes of the FLSA.

## IV.

Accordingly, the Joint Motion for Approval of Collective Action Settlement (ECF No. 18) is **GRANTED**. The Settlement Agreement (ECF No. 18-1) is **APPROVED** and the case is **DISMISSED**. The Court shall retain jurisdiction over this matter for the purpose of enforcing the Settlement Agreement. The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED.**


**11/2/2020**                               **s/Edmund A. Sargus, Jr.**
**DATE**                                    **EDMUND A. SARGUS, JR.**
                                            **UNITED STATES DISTRICT JUDGE**